IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 21-32155 (MI) |
| BUCKINGHAM SENIOR LIVING COMMUNITY, INC.[1] | § § § § | CHAPTER 11 |
| Debtor. | § § | |

**DEBTOR'S APPLICATION TO EMPLOY MCGUIREWOODS LLP AS COUNSEL TO THE DEBTOR-IN-POSSESSION**

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Buckingham Senior Living Community, Inc. ("The Buckingham" or the "Debtor") files this *Application to Employ McGuireWoods LLP* ("McGuireWoods") *as Counsel to the Debtor-in-Possession* (the "Application"). In support of the Application, the Debtor incorporates the *Declaration of Michael Wyse in Support of Voluntary Petition and First Day Motions* (the "First

---

[1] The last four digits of the Debtor's federal tax identification number are: 7872. The location of the Debtor's principal place of business and the service address for the Debtor is: 8580 Woodway Drive Houston, Texas 77063.

Day Declaration")[2] and the *Declaration of Demetra Liggins in Support of the Application* (the "Liggins Declaration") filed contemporaneously herewith and attached as **Exhibit A**.

## RELIEF REQUESTED

1. By this Application, the Debtor respectfully requests entry of an order substantially in the form attached as **Exhibit B** (the "Order") authorizing the Debtor to employ McGuireWoods as counsel as of the Petition Date (as defined below) pursuant to sections 327(a), 328, 330 and 1107 of the Bankruptcy Code (as defined below), Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b) and the Bankruptcy Local Rules, and in accordance with the terms and conditions set forth in that certain engagement letter between the Debtor and McGuireWoods (the "Engagement Letter"), a copy of which is attached **Exhibit 1** to the Liggins Declaration and incorporated herein by reference.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 327, 328, 330 and 1107.

## PROCEDURAL BACKGROUND

5. On June 25, 2021 (the "Petition Date"), the Debtor commenced this case (the "Case") by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[2] Dkt. No. 17.  All capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the First Day Declaration.

6. The Debtor has continued to operate and manage its business and affairs as debtor-in-possession, pursuant to Bankruptcy Code sections 1107 and 1108(a).

7. On July 12, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Case.[3]

## RELEVANT FACTUAL BACKGROUND

8. Factual information regarding the Debtor, including the Debtor's business and indebtedness and the events leading to this chapter 11 Case is contained in the First Day Declaration.

## MCGUIREWOODS' QUALIFICATIONS

9. The Debtor seeks to employ McGuireWoods as lead bankruptcy counsel as of July 1, 2021 because Demetra Liggins, the core member of the legal team who led the Debtor's restructuring efforts, began transitioning her legal practice to McGuireWoods from Thompson & Knight, LLP ("TK") as of such date. Accordingly, Ms. Liggins has extensive prepetition and postpetition experience providing legal services to the Debtor, including significant knowledge of the Debtor's non-profit operations, financial affairs, liabilities, and legal issues being addressed in the Debtor's restructuring. Moreover, Ms. Liggins is familiar with the key stakeholders that are actively participating in this case. For this reason alone, McGuireWoods is uniquely able to represent the Debtor in this Case.

10. McGuireWoods also has recognized expertise and extensive knowledge in the field of company protections, creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code, as well as McGuireWoods' experience with corporate and healthcare matters. The Debtor selected McGuireWoods as bankruptcy counsel because the Debtor believes that

---

[3] Dkt. No. 97.

McGuireWoods is well-qualified to represent it in this Case. McGuireWoods has extensive experience and knowledge in the field of non-profit business organizations and reorganizations pursuant to chapter 11 of the Bankruptcy Code. McGuireWoods also has expertise, experience and knowledge practicing before bankruptcy courts and has represented debtors, lenders, committees, investors, receivers, shareholders, and purchasers. McGuireWoods is a full-service legal firm with experience and expertise in other legal areas that will also be affected during this Case. McGuireWoods is composed of attorneys duly licensed to practice law before many courts, including the Courts of the State of Texas and the United States District and Bankruptcy Courts for the Southern District of Texas. McGuireWoods therefore has the necessary experience and expertise to effectively address the issues that will arise in this case.

11. The Debtor believes that McGuireWoods possesses the requisite resources and is highly qualified and uniquely able to serve as lead bankruptcy counsel in this Case and is capable of handling the work to effectively assist the Debtor with the administration of this Case. The Debtor could not replace the core member of the restructuring team without incurring significant costs in terms of the time and money that would be required to select and educate replacement counsel. Moreover, McGuireWoods and TK have work cooperatively to ensure that the transition of services to McGuireWoods did not interrupt or delay the Debtor's restructuring efforts.

## SERVICES TO BE PROVIDED

12. Subject to further order of this Court and consistent with the Engagement Letter, the Debtor requests the retention and employment of McGuireWoods to perform the following professional services (collectively, the "Services"):[4]

---

[4] This summary is for convenience purposes only. To the extent that the summary conflicts with the Engagement Letter, the Engagement Letter shall govern. Capitalized terms in this summary shall have the meanings ascribed to them in the Engagement Letter.

(a) advising the Debtor with respect to its powers and duties, including with respect to the requirements of a debtor-in-possession under 11 U.S.C. § 521;

(b) attending meetings and negotiating with any official committees, the representatives of creditors and other parties-in-interest;

(c) advising the Debtor concerning, and assisting in, the negotiation and documentation of financing agreements, debt restructurings, and asset securitization;

(d) reviewing the nature and validity of agreements relating to the Debtor's interests in real and personal property and advising the Debtor of its corresponding rights and obligations;

(e) reviewing the nature and validity of liens or claims asserted against the Debtor's property and advising the Debtor concerning the enforceability of those liens and claims;

(f) advising the Debtor concerning preference, avoidance, recovery, or other actions that it may take to collect and to recover property for the benefit of the estate and its creditors, whether or not arising under chapter 5 of the Bankruptcy Code;

(g) preparing on the Debtor's behalf all necessary and appropriate applications, motions, pleadings, draft orders, notices, and other documents, and reviewing all financial and other reports to be filed in this Case;

(h) advising the Debtor concerning, and preparing responses to, applications, motions, complaints, pleadings, notices, and other papers that may be filed and served in this Case;

(i) counseling the Debtor in connection with the formulation, negotiation, and promulgation of a plan of reorganization and related documents, if necessary;

(j) performing all other legal services for and on the Debtor's behalf that may be necessary or appropriate in the administration of the Case and the Debtor's business;

(k) working with and coordinating efforts among other professionals, including co-counsel and other special counsels as may be retained by the Debtor, to attempt to preclude any duplication of effort among those professionals and to guide efforts in the overall framework of the Debtor's reorganization;

(l) representing the Debtor in connection with obtaining authority to enter into post-petition financing;

(m) advising the Debtor in connection with any potential sale of assets and/or balance sheet restructurings;

(n) appearing before the Court and any appellate courts to represent the Debtor;

(o) taking any necessary action on the Debtor's behalf to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all related documents;

(p) preparing retention and employment applications of other professionals, such as financial advisors and accountants, that the Debtor may determine are needed in case administration;

(q) preparing for, instituting and prosecuting any examination under Bankruptcy Rule 2004 and if necessary, in furtherance thereof, to institute and prosecute motions to compel attendance and removal of persons for Examination under Bankruptcy Rule 2005;

(r) advising and representing the Debtor regarding non-routine sales of the assets of the Debtor's estate, wherever they may be found, including sales free and clear of liens, claims and encumbrances; and

(s) performing all other legal services for and on the Debtor's behalf that may be necessary or appropriate in the administration of this Case and the Debtor's business, including (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection of same; (ii) analyzing the validity of liens against the Debtor; and (iii) advising the Debtor on corporate and litigation matters.

13. The nonexclusive services described above are essential to the Debtor's successful reorganization. The Debtor may, from time to time, request that McGuireWoods undertake specific matters beyond the scope of the responsibilities set forth above. Should McGuireWoods agree, in its sole discretion, to undertake any such matters, the Debtor seeks authority herein to employ McGuireWoods for such matters, in addition to those set forth above without further order of this Court.

14. The Debtor is simultaneously filing an application to employ TK as special counsel and anticipates that McGuireWoods will replace TK as lead bankruptcy counsel in rendering the foregoing professional services. In light of the integral role of Ms. Liggins who has transitioned

her practice to McGuireWoods from TK, the Debtor submits that the retention of McGuireWoods as lead bankruptcy counsel is necessary and appropriate under the circumstances. McGuireWoods has been acting as bankruptcy counsel since the transition and has indicated its desire and willingness to act in this Case and render necessary professional services to the Debtor, subject to the Court's entry of an order approving the Firm's retention as of July 1, 2021.

15. The Debtor reserves the right to amend this Application and/or seek approval to employ other professionals as needed to properly administer this Case.

## PROFESSIONAL COMPENSATION

16. McGuireWoods intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with this Case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure McGuireWoods will use in this Case are the same as the hourly rates and corresponding rate structure that McGuireWoods uses in other restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

17. McGuireWoods operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, including but not limited to his or her area of specialization, the firm's expertise, performance, and reputation, and the nature of the work involved. As discussed in more detail below, McGuireWoods' rates are subject to periodic change in the ordinary course of business. McGuireWoods' current hourly rates for the Services in this Case are expected to be within the following ranges:

| | |
|---|---|
| Partners | $650 to $1,495 |
| Associates and Counsel | $425 to $1,305 |
| Paraprofessionals | $185 to $475 |

McGuireWoods' hourly rates are set at a level designed to compensate McGuireWoods fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The following attorneys are expected to have primary responsibility for providing the Services to the Debtor: Demetra Liggins ($915 per hour); Sarah Boehm ($870 per hour); and Joanne Wu ($455 per hour). As necessary, other McGuireWoods professionals and paraprofessionals will provide the Services to the Debtor.

18. The Debtor agrees, subject to the fee application process and this Court's approval, to pay McGuireWoods based on time spent rendering legal services on an hourly basis in accordance with its ordinary and customary hourly rates for cases of this nature as are in effect on the date services are rendered.

19. Each professional's rate will be clearly reflected in the invoices and fee applications. McGuireWoods will maintain detailed records of costs and expenses incurred in connection with its legal services and these will be set forth in detail in monthly invoices and fee applications. McGuireWoods' hourly rates are set at a level designed to compensate McGuireWoods fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5]

---

[5] For example, like many of its peer law firms, McGuireWoods generally increases the hourly billing rate of attorneys and paraprofessionals yearly in the form of: (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for*

20. McGuireWoods' hourly rates are consistent with the rates that McGuireWoods charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the chapter 11 case. McGuireWoods, to the extent possible, attempts to observe the prevailing rates for legal services rendered by attorneys of comparable expertise in similar cases in the relevant jurisdiction. Accordingly, an individual's rate in other cases may be lower or higher than those charged in this engagement, depending upon prevailing rates in the various jurisdictions.

21. The rate structure provided by McGuireWoods is appropriate and not significantly different from: (a) the rates that McGuireWoods charges for other similar types of representations; or (b) the rates that other comparable counsel would charge to do work substantially similar to the work McGuireWoods will perform in this Case.

22. McGuireWoods' policy is to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. McGuireWoods' policy is also to charge its clients only the amount actually incurred by McGuireWoods in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

23. To ensure compliance with all applicable deadlines in this Case, from time to time McGuireWoods utilizes the services of overtime secretaries. McGuireWoods will bill the Debtor for overtime secretarial charges that arise out of business necessity. Additionally, McGuireWoods

---

*Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013.).

professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with pre-petition practices.

24. McGuireWoods currently charges $0.10 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, McGuireWoods will charge no more than $0.10 per page for standard duplication services in this Case. McGuireWoods does not charge its clients for incoming facsimile transmissions. McGuireWoods has negotiated a discounted rate for Westlaw and LEXIS computer-assisted legal research, which is used whenever the researcher determines that Westlaw and LEXIS is more effective than using traditional (non-computer assisted legal research) techniques.

25. McGuireWoods also seeks approval of the payment of a postpetition retainer in the amount of $125,000 from the Debtor to secure payment of obligations owing to McGuireWoods, including, but not limited to, McGuireWoods' expenses and fees incurred in this Case.

## MCGUIREWOODS' DISINTERESTEDNESS

26. To the best of the Debtor's knowledge after diligent inquiry, and as disclosed in the Liggins Declaration: (a) McGuireWoods is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtor's estate; and (b) McGuireWoods has no connection to the Debtor, its creditors, or other parties in interest, or their respective attorneys and accountants, the U.S. Trustee, or any person employed in the U.S. Trustee's Offices, except as may be disclosed in the Liggins Declaration.

27. As described in the Liggins Declaration, McGuireWoods researched its client database and performed reasonable due diligence to determine whether it has any relationships with the entities listed on **Schedule 1** attached to the Liggins Declaration and incorporated herein

by reference (collectively, the "Potential Parties-in-Interest").[6] As detailed in the Liggins Declaration, McGuireWoods currently represents or has represented certain Potential Parties-in-Interest (and in some cases their affiliates) in other, unrelated matters. As disclosed on **Schedule 2** attached to the Liggins Declaration and incorporated herein by reference, certain Potential Parties-in-Interest are current or former/inactive clients of McGuireWoods.[7] The Debtor understands that McGuireWoods represents or has represented certain Potential Parties-in-Interest in other, unrelated matters, as set forth in **Schedule 2** attached to the Liggins Declaration.

28. McGuireWoods has agreed with the Debtor not to represent any such Potential Parties-in-Interest in any matters adverse to the Debtor related to this Case. The Debtor will engage separate counsel where necessary and appropriate to investigate certain claims or transactions and evaluate certain sensitive issues. If, hypothetically, actual conflicts were to emerge, any conflicts could be alleviated through the use of special counsel.

29. McGuireWoods will review its files periodically during the pendency of this Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, McGuireWoods will use reasonable efforts to identify such further developments and will promptly supplement the Liggins Declaration, as required by Bankruptcy Rule 2014(a).

---

[6] To maintain Resident confidentiality pursuant to the *Order Granting Debtor's Emergency Motion to (A) Implement Certain Notice Procedures; and (B) Implement Procedures to Maintain and Protect Resident Information* [Dkt. No. 37], Residents' names are not listed in Schedule 1 to the Liggins Declaration. McGuireWoods, however, did perform a conflicts analysis against all Residents' names, and no conflicts or potential conflicts of interest exist. McGuireWoods has provided the Court with a list of all Residents' names.

[7] As referenced in **Schedule 2**, the term "current" client means a client to whom time was posted within 2 years of the Petition Date. As referenced in **Schedule 2**, the term "former/inactive" client means a client that was invoiced over 2 years before the Petition Date.

## SUPPORTING AUTHORITY

30. The Debtor seeks retention of McGuireWoods as its attorneys pursuant to section 327(a) of the Bankruptcy Code, which sets forth requirements that a professional to be employed by the estate possess neither (a) an adverse interest nor (b) a conflict of interest:

> [T]he [Debtor], with court's approval may employ one or more attorneys, accountants, appraisers, auctioneers, or other professionals, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to present or assist trustee in carrying out the trustee's duties under this title.[8]

31. Further, McGuireWoods should not be "disqualified for employment under section 327 solely because of such person's employment by or representation of a creditor" unless such representation "is an actual conflict of interest."[9]

32. The law is clear that a debtor's choice of counsel should be disturbed only in the "rarest" cases, and not based on allegations of potential conflicts.[10] Courts give "great deference" to the debtor's choice of counsel.[11] The Court is also permitted to take a "wait-and-see" approach to determine whether conflicts ripen rather than prophylactically disqualifying a party's counsel of choice.[12]

---

[8] 11 U.S.C. § 327(a).

[9] 11 U.S.C. § 327(c); *In re Hummer Transp.*, No. CV F 13–1640 LJO, 2014 WL 412534, at *6 (E.D. Cal. Feb. 3, 2014) (actual conflict required for disqualification).

[10] *See In re Persaud*, 496 B.R. 667, 670-71 (E.D.N.Y. Jan. 20, 2013) (emphasis added); *see also In re Enron Corp.*, No. 01-16034(AJG), 2002 WL 32034346, at *2 (Bankr. S.D.N.Y. May 23, 2002), ("The debtor's right to choose qualified counsel should be disturbed only in the rarest cases."); *Vergos v. Timber Creek, Inc.*, 200 B.R. 624, 628 (W.D. Tenn. Aug. 27, 1996) ("The debtor's right to choose qualified counsel should be disturbed only in the rarest cases.").

[11] *Enron Corp.,* 2002 WL 32034346, at *5.

[12] *See, e.g., In re Universal Enters., LLC*, No. 09-2862, 2010 WL 2403354, at *4 (Bankr. N.D.W. Va. June 9, 2010); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 673 (Bankr. S.D.N.Y. Jan. 26, 2006); *In re Gilbertson's Restaurants LLC*, No. 04-00384, 2004 WL 1724878, at *5 (Bankr. N.D. Iowa May 3, 2004); *In re White Glove, Inc.*, No. 98-12493DWS, 1998 WL 226781, at *4 (Bankr. E.D. Pa. Apr. 29, 1998).

33. Bankruptcy Rule 2014(a) further requires that retention application include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.[13]

34. The Debtor submits that for all the reasons stated herein and in the Liggins Declaration, the retention and employment of McGuireWoods as counsel to the Debtor is warranted. The Debtor believes that McGuireWoods is well qualified for this Case. The Debtor selected McGuireWoods for the reason that it has had considerable experience in matters of this character. The legal issues to be addressed in this Case can be adequately handled by McGuireWoods.

35. The Debtor requests that McGuireWoods' employment as Debtor's counsel be effective as of July 1, 2021.

## NO PRIOR REQUEST

36. No prior request for the relief sought in this Application has been made to this or any other court.

## PRAYER

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order granting the relief requested herein and such other and further relief as this Court may deem proper, both at law and in equity.

---

[13] Fed. R. Bankr. P. 2014.

Dated: July 26, 2021

　　　　　　　　　　　　　　　　　　　　Michael Wyse, Chair of the Board of Directors

APPLICATION TO EMPLOY MCGUIREWOODS LLP                                                                        PAGE 14
147344595